**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISON**

| | | |
|---|---|---|
| BRANDON FUENTES, Indvidually and on behalf of all others similarly situated, | ) | Civil Action No.______________ |
| | ) | CLASS ACTION COMPLAINT |
| | ) | JURY TRIAL DEMANDED |
| Plaintiff, | ) | |
| v. | ) | |
| WALMART, INC., | ) | |
| Defendant | ) | |

---

## CLASS ACTION COMPLAINT

Comes Now Brandon Fuentes ("Plaintiff") by and through his undersigned counsel and alleges upon information and belief, except allegations about Plaintiff which are based on personal knowledge:

## <u>NATURE OF ACTION</u>

1. This class action seeks to hold Defendant Walmart, Inc. ("Defendant") responsible for mislabeling the calorie content on Defendant's Great Value Pesto product (the "Product").

2. Defendant sells the Product nationwide including in the state of Florida under the label of Great Value Pesto in the jar as follows:




3. Defendant's product is labeled as containing sixty (60) calories per sixty (60) gram serving as shown in the picture below:




4. However, independent testing of the product shows the actual calorie count to be over three times the amount shown on the label with the actual calorie count

for the sixty gram serving to be 188.4 calories. (see Independent Testing Results attached as Exhibit "A" and incorporated by reference herein)

5. Defendants false labeling of the Product violates Florida's Deceptive Trade Practices Act ("FDUTPA") Fla. Stat. § 501.201 *et seq*., Fla. Stat. § 817.41 for false and misleading advertising, and give rise to common law claims of unjust enrichment, fraud by omission/intentional misrepresentation, negligent misrepresentation, and breaches of expressed and implied warranties, all as set forth in more detail herein.

## PARTIES

6. Plaintiff is a resident of Plantation, Florida.

7. Defendant is a Delaware corporation registered to do business in the State of Florida.

## JURISDICTION AND VENUE

8. This Court has original jurisdiction over this action pursuant to 28 on U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate, exclusive of interest and costs. The Products are sold at numerous retail stores and Plaintiff is seeking to represent a nationwide class. Thus, there are over 100 members in the proposed class and the proposed class has different citizenships from Defendant. Plaintiff seeks compensatory and

statutory damages, disgorgement and restitution. Plaintiff also seeks punitive damages and attorneys' fees and costs.

9. This Court has personal jurisdiction over the Defendant in that Defendant conducts and transacts business in the State of Florida, as well as throughout the United States. Defendant operates 387 total retail units in Florida https://corporate.walmart.com/about/location-facts/united-states/florida (last checked 2/8/2026).

10. Defendant has intentionally availed itself of the markets within Florida and across the United States. As such this Court has personal jurisdiction over Defendant and Defendant may be served through it Florida registered agent at C T CORPORATION SYSTEM 1200 SOUTH PINE ISLAND ROAD PLANTATION, FL 33324.

11. Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District since Plaintiff purchased the Products within this District.

## FACTUAL ALLEGATIONS.

12. Plaintiff is a health conscious individual that relies on nutritional/caloric labels in making purchasing decisions.

13. Federal law requires "Nutrition information relating to food shall be provided for all products intended for human consumption and offered for sale" 21 CFR § 101.9(a). Further caloric content must be provided. 21 U.S. Code § 343

q(1)(C). Food not properly labeled as to nutritional content (including calories) is a violation of law.

14. Defendant Walmart is the number one by sales of all grocers in the United States with fiscal grocery sales in 2025 of over 276 billion dollars (not including Walmart's Sam's Clubs). https://www.foodindustry.com/articles/top-10-grocers-in-the-united-states-2019/ (last checked 2/8/2026)

15. On August 30, 2024 Plaintiff went to a Walmart in Sunrise Florida to shop. He wanted to make a pasta dinner, and purchased several items (See receipt attached as Exhibit "B"), including linguine and based on the price and calories shown on the label, he bought a jar of the Product, Great Value Pesto. The nutritional label showed the Product only had 60 calories per serving.

16. The Plaintiff shops for food based on both price and nutritional/calorie content. In deciding to buy the Product he relied on the advertised calorie count. He would not have bought the Product had he known its actual calorie content.

17. In fact, some time after purchasing the product, Plaintiff was telling a friend of his, a medical student, about the Product and his friend told him there was no way it only had sixty calories per servings.

18. Plaintiff's counsel had the Product tested by an independent laboratory and in fact the actual calorie count is over three times the calorie count claimed by the Defendant.

19. Consumers like the Plaintiff rely on nutritional labeling statements and

such representations on nutritional labeling statements are material and reasonably relied upon Defendant's Products false and misleading nutritional labeling statement.

20. Consumers like the Plaintiff will not buy high calorie foods but opt for other foods. For example, a calorie conscious consumer would buy a tomato based pasta sauce such as the Defendant's tomato garlic pasta sauce which is advertised to have only 60 calories per serving (said serving size being 128 grams compared to the Product's advertised serving size of 60 grams).

21. Consumers, like Plaintiff, relied on Defendant's written representations of the nutritional label, including but not limited to the representations concerning the calories per serving. Such representations are material to and justifiably relied upon by reasonable consumers.

22. Plaintiff and putative class members suffered economic injury as a result of Defendant's actions. Plaintiff and putative class members spent money that, absent Defendant's actions, they would not have spent. Plaintiff and the putative class members claim not that they would pay a premium price based on the calorie content, but rather that they would not have bought the Product.

23. Plaintiff and putative class members are entitled to damages and restitution for the purchase price of the Products associated with the false and deceptive representations on the Product's labels. Consumers, including Plaintiff, would not have purchased Defendant's Products, or would have paid less for the Products, if they had known the Products the true nutritional values and caloric amounts.

24. Plaintiff brings this action as a class action pursuant to the Federal Rules of Civil Procedure on behalf of the following Classes and/or alternative Subclasses:

**Nationwide Class:** All U.S. citizens who purchased the Product in their respective state of citizenship for personal and household use and not for resale within the applicable statute of limitations and until the date class notice is disseminated.[1]

**Florida Subclass:** All Florida citizens who purchased the Product in Florida for personal and household use and not for resale within the applicable statute of limitations and until the date class notice is disseminated.

25. The Classes and Subclasses described in this complaint will jointly be referred to the "Class" or the "Classes" unless otherwise stated, and the proposed members of the Classes and Subclasses will jointly be referred to as "Class Members."

26. Plaintiff and the Class reserve their right to amend or modify the Class definitions with greater specificity or further division into subclasses or limitation to particular issues as discovery and the orders of this Court warrant.

[1] It appears that Defendant changed its label recently listing a calorie count more in line with the independent lab's report shown in Exhibit "A" of the Product calorie count. As such, upon conducting discovery the Plaintiff intends to request to amend the class timeframe congruent with the revised labeling of the product. It also appears the Defendant revised other nutritional information such as total fat (prior label 19 grams and current label 16 grams), Protein (prior label 3 grams and current label 2 grams), etc. Plaintiff does not know if this was due to a change in the ingredients or the Defendant corrected the incorrect labeling. Defendant ingredient's list on the current label is slightly different on the ingredient list on the Product. As such, Plaintiff intends to seek to amend this Complaint after discovery concerning the new labeling and any possible ingredient changes in the Product.

27. Excluded from the Class are: (i) Defendant and its officers, directors, and employees; (ii) any person who files a valid and timely request for exclusion; (iii) judicial officers and their immediate family members and associated court staff assigned to the case; (iv) individuals who received a full refund of the Product from Defendant.

28. The Class is appropriate for certification because Plaintiff can prove the elements of the claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

29. Numerosity: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

30. Commonality: There is a well-defined community of interest in the common questions of law and fact affecting all Class Members. The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a. Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;
b. Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Products;
c. Whether Defendant made misrepresentations, either intentionally or negligently concerning the Products that were likely to deceive the public;

d. Whether the Defendant is liable to the Florida class members based under Florida Deceptive and Unfair Trade Practices Act (FDUTPA);

e. Whether the Defendant is liable under claims of unjust enrichment;

f. Whether the Defendant is liable for breach of express or implied warranties;

g. Whether the Defendant is liable for negligent misrepresentation;

h. Whether the Defendant is liable for fraud by omission/misrepresentation;

i. Whether Plaintiff and the Class are entitled to money damages and/or restitution under the same causes of action as the other Class Members.

31. Typicality: Plaintiff is a member of the Class that Plaintiff seeks to represent. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased the Product. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

32. Adequacy: Plaintiff is an adequate Class representative because Plaintiff's interests do not conflict with the interests of the Class Members Plaintiff seeks to represent; the consumer fraud claims are common to all other members of the Class, and Plaintiff has a strong interest in vindicating the rights of the class; Plaintiff has retained counsel competent and experienced in class action litigation and Plaintiff intends to vigorously prosecute this action. Plaintiff has no interests which conflict with those of the Class. The Class Members' interests will be fairly and adequately protected by Plaintiff and proposed Class Counsel. Defendant has acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiff and the Class Members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent

and varying adjudications.

33. The Class is properly brought and should be maintained as a class action because a class action is superior to traditional litigation of this controversy. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a. The joinder of hundreds of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive to justify individual actions;

c. When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f. This class action will assure uniformity of decisions among Class Members;

g. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation; and

h. Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action.

**COUNT ONE**

**VIOLATIONS OF FLORIDA DECEPTIVE AND UNFAIR RADE PRACTICES ACT("FDUTPA") FLORIDA CLASS**

34. Plaintiffs and the Putative Class members reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative

35. FDUTPA provides an avenue to punish a wrongdoer for "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." § 501.204, Fla. Stat. An FDUTPA violation may be based on "The standards of unfairness and deception set forth and interpreted by the Federal Trade Commission or the federal courts" § 501.203(3)(b), Fla. Stat.; as well as "Any law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices." § 501.203(3)(c), Fla. Stat.

36. The provisions of the FDUTPA 501.202, Fla. Stat. "shall be construed liberally……" to among other things, "To protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." This lawsuit seeks to protect the consuming

public from false and misleading information by the Defendant and to prevent the Defendant from similar actions in the future.

37. Defendant was, at all times material to the allegations herein, engaged in "trade or commerce" as defined by the Act. § 501.203, Fla. Stat.

38. Defendant's acts in either intentionally or negligently mislabeling the Product is an unfair method of competition, an unconscionable act or practice, and an unfair or deceptive act or practice in the conduct of any trade or commerce. A company with the resources and being the largest retailer of groceries in the United States should be aware of its legal obligations to properly label foods and meet those obligations.

39. The mislabeling of the caloric content of the Product was likely and did deceive reasonable consumers such as the Plaintiff and putative class members and was a violation of law.

40. Relying on the calorie claims made on the Product, consumers including Plaintiff purchased the Product believing they were purchasing foods containing 60 calories per serving, when they were not.

41. Defendant's use of incorrect, deceptive, false, and/or misleading Product label constitutes an unfair or deceptive trade practice within the meaning of the FUDTPA. The incorrect labels practice was likely to deceive a consumer acting reasonably in the same circumstances, and actually did deceive the Plaintiff.

42. The Defendant's actions described herein are the proximate cause of the damages described herein.

43. Such damages recoverable by Plaintiffs and the Class include, without limitation, monetary losses and actual, punitive, and consequential damages, in an amount to be proven at trial, as well as costs of suit and attorneys' fees.

**COUNT II**

**UNJUST ENRICHMENT**

44. Plaintiffs and the Putative Class members reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

45. Defendant through the Product labeling misrepresented and deceived consumers, including but not limited to the Plaintiff and the Putative Class Members, about the caloric content of the Product.

46. Defendant did so for the purpose of enriching itself and it in fact enriched itself by doing so.

47. The Plaintiff and the Putative Class Members conferred a benefit on Defendant in the form of the gross revenues Defendant derived from the money they paid to Defendant for the Product.

48. Defendant knew of the benefit conferred on it by Plaintiff and the Putative Class Members.

49. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff and the Putative Members' purchases of the Products, which retention of such revenues under these circumstances is unjust and inequitable because Defendant incorrectly labled the Product. This caused injuries to Plaintiffs and Members of the Classes because they would not have purchased the Product if the true facts concerning the Product had been known.

50. Defendant accepted and retained the benefit in the amount of the gross revenues it derived from sales of the Product to Plaintiff and the Putative Members.

51. Defendant has thereby profited by retaining the benefit under circumstances which would make it unjust for Defendant to retain the benefit.

52. Plaintiff and the Putative Members are, therefore, entitled to restitution in the form of the revenues derived from Defendant's sale of the Product.

53. As a direct and proximate result of Defendant's actions, Plaintiff and the Putative Members have suffered in an amount to be proven at trial.

54. Plaintiff and Putative class members have suffered an injury in fact and have lost money as a result of Defendant's unjust conduct lack an adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

## COUNT THREE

## Fraud by Omission / Intentional Misrepresentation

55. Plaintiff and the Putative Class members reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

56. Plaintiff brings this cause of action individually and on behalf of the nationwide class and the Florida state subclass against Defendant.

57. This claim is based on the Defendant's deceptive, unfair, fraudulent and/or negligent omissions and misrepresentation of the Product's true calorie count.

58. The deceptive, unfair, fraudulent and/or negligent omissions and misrepresentation were made with knowledge of their falsehood and/or the Defendant's blatant disregard for its labeling obligations. Defendant knew or should have known the true nature of the Product's calorie count. Nonetheless, Defendant continued to sell the Product using the false and misleading omissions alleged herein to unsuspecting consumers.

59. The deceptive, unfair, fraudulent and/or negligent omissions and misrepresentation were made by Defendant, upon which Plaintiffs and Class Members reasonably and justifiably relied, and were intended to induce and actually induced Plaintiff and the Putative Class Members to purchase the Product.

60. Additionally, to the extent the Defendant claims a "mistake" was made on the Product label, upon information and belief Plaintiff asserts there was a time period between the discovery of the "mistake" and the correction of the Product label where the Defendant sold the Product clearly knowing of the mistake and failing to be honest with consumers, including but not limited to the Plaintiff and the Putative Class Members.

61. The deceptive, unfair, fraudulent and/or negligent omissions and misrepresentation caused injury to Plaintiff and the Putative Class Members who are entitled to actual, compensatory, and consequential damages, as well as punitive damages.

## COUNT FOUR
## BREACH OF IMPLIED WARRANTY

62. Plaintiff and the Putative Class members reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

63. Plaintiff brings this cause of action individually and on behalf of the nationwide class and the Florida state subclass against Defendant.

64. Plaintiff brings this claim for breach of implied warranty individually and on behalf of all Classes against Defendant.

65. Plaintiff and the Class purchased the Products manufactured, advertised, and sold by Defendant, as described herein.

66. Defendant, through its acts and omissions set forth herein, in the sale, marketing, and promotion of the Products, misrepresented the characteristics of the Products to Plaintiff and the Class.

67. Defendant is a merchant with respect to the goods of this kind which were sold to Plaintiff and the Class, and there was, in the sale to Plaintiff and other consumers, an implied warranty that those goods were merchantable and the Defendants representations about the nutritional and caloric contents are true and correct. This duty is also required under state and federal law.

68. However, Defendant breached that implied warranty in that the Products did not have 60 calories per serving, but in fact had over three times the calories advertised.

69. As an actual and proximate result of Defendant's conduct, Plaintiff and the Class did not receive goods as impliedly warranted by Defendant to be merchantable in that the Products did not conform to promises and affirmations made on the label of the Products. As Plaintiff and the Putative Class members would not have bought the Product had they known the true calorie count, they have been damaged.

## COUNT FIVE
## NEGLIGENT MISPRSENTATION

70. Plaintiff and the Putative Class members reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

71. Plaintiff brings this cause of action individually and on behalf of the nationwide class and the Florida state subclass against Defendant.

72. Plaintiff brings this claim for negligent misrepresentation individually and on behalf of all Classes against Defendant.

73. Defendant had a duty to disclose to Plaintiff and Putative Class Members correct information as to the quality and characteristics of the Product because Defendant was in a superior position than Plaintiff and Class Members such that reliance by Plaintiff and Class Members was justified. Further the Defendant had such a duty under state and federal law. Defendant possessed the skills and expertise to know the type of information that would influence a consumer's purchasing decision.

74. During the applicable class period, Defendant negligently and/or carelessly misrepresented, omitted, and concealed from consumers material facts regarding the quality and characteristics of the Products, including the fact that the Product contained over three times the actual advertised calorie count.

75. Defendant made such false and misleading statements and omissions with the intent to induce Plaintiff and Class Members to purchase the Products

76. Defendant was careless in ascertaining the truth of its representations in that it knew or should have known that Plaintiff and Class Members would be overpaying for the Products or not buying the Product at all.

77. Plaintiff and Class Members were unaware of the falsity in Defendant's misrepresentations and omissions and, as a result, justifiably relied on them when making the decision to purchase the Product. Plaintiff and Putative Class Members reasonably rely of food nutritional labels as they are required by Federal Law.

78. Plaintiff and the Putative Class Members would not have purchased the Product if they knew the correct calorie count.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for the following relief:

a) For an order certifying the Class and naming Plaintiff as the representative of the Class and/or Classes;

b) For an order declaring Defendant's conduct violates the statutes referenced herein;

c) For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

d) For actual, compensatory, statutory, and/or punitive damages in amounts to be determined by the Court and/or jury;

e) For prejudgment interest on all amounts awarded;

f) For an order of restitution and all other forms of equitable monetary relief;

g) For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees, expenses, and costs of suit; and

h) For all further relief that the Court finds just and equitable under the facts and circumstances of this case.

**JURY DEMAND**

Plaintiffs request a jury trial on all issues so triable.

Respectfully Submitted this 25th day of February, 2026

*/s/ Michael J. Lober*

______________________________

MICHAEL J. LOBER
Florida State Bar No. 0965560
Georgia State Bar No. 455580
Attorneys for Plaintiff
WILLIAM GREGORY DOBSON
Georgia State Bar No. 237770
Pro Hac Vice Admission Application
Petition Forthcoming

Lober & Dobson, LLC
1197 Canton St.
Roswell, Georgia 30075
(770) 741-0700
mjlober@lddlawyers.com
wgd@lddlawyers.com

Brent Irby
Georgia State Bar No. 224232
Pro Hac Vice Admission Application
Petition Forthcoming

Lyons Irby LLC
2201 Arlington Avenue South
Birmingham, AL 35205
205-335-9102
brent@lyonsirby.com

Todd L. Lord
Georgia Bar No.: 457855
Pro Hac Vice Admission Application
Petition Forthcoming

Law Office of Todd L. Lord
Post Office Box 901
4 Courthouse Square
Cleveland, Georgia 30528
Telephone: 706-219-2239
Facsimile: 706-348-8100
Email: attytllord@windstream.net

**EXHIBIT A**

**SILLIKER, Inc.**

**Stone Mountain, GA Laboratory**

2169 West Park Court, Suite G, Stone Mountain, GA 30087

Tel. 888-314-0779 Fax. 770-469-2883

Email: getresults-core@mxns.com

## CERTIFICATE OF ANALYSIS

| | |
|---|---|
| **COA No:** | ATL-49731201-0 |
| **Supersedes:** | None |
| **COA Date** | 9/19/25 |
| **Page 1 of 4** | |

***TO:***
Mr. William Dobson
Attorney
William G Dobson PC
PO BOX 349
Lookout Mountain, TN 37350

| | |
|---|---|
| ***Received From:*** | Lookout Mountain, TN |
| **Received Date:** | 8/25/25 |
| ***P.O.# / ID:*** | 57439 |
| **Location of Test: (except where noted)** Stone Mountain, GA | |

**Laboratory ID:** 445064394 **Condition Rec'd:** NORMAL **Temp Rec'd (°C):** 26.4

***Sample Name:*** Great Value Pesto 1

Nutrition - Mandatory

**NUTRITIONAL ANALYSIS**

Household Measure: 100 g

Serving Size: 100.0 g

| Analytes | Units | Results Per 100g | Amount Per Serving | Test Date | Test Location |
|---|---|---|---|---|---|
| Calories | | 314.0 | 314.0 | 09/19/2025 | |
| Total Fat | g | 28.95 | 28.95 | 08/29/2025 | CHG-HTS |
| Monounsaturated Fat | g | 9.15 | 9.15 | 09/19/2025 | |
| Polyunsaturated Fat | g | 14.30 | 14.30 | 09/19/2025 | |
| Saturated Fat | g | 4.07 | 4.07 | 09/19/2025 | |
| Trans Fat | g | 0.15 | 0.15 | 09/19/2025 | |
| Cholesterol | mg | 4.8 | 4.8 | 09/04/2025 | CHG-HTS |
| Sodium | mg | 1320 | 1320 | 09/02/2025 | CHG-HTS |
| Potassium | mg | 153 | 153 | 09/02/2025 | CHG-HTS |
| Total Carbohydrate | g | 9.2 | 9.2 | 09/19/2025 | |
| Dietary Fiber‡ | g | 2.49 | 2.49 | 09/18/2025 | CHG-HTS |
| Sugars‡‡ | g | 1.14 | 1.14 | 08/28/2025 | CHG-HTS |
| Fructose | g | 0.38 | | 09/19/2025 | |
| Glucose | g | 0.76 | | 09/19/2025 | |
| Lactose | g | <0.25 | | 09/19/2025 | |
| Maltose | g | <0.25 | | 09/19/2025 | |
| Sucrose | g | <0.25 | | 09/19/2025 | |
| Protein (F=6.25) | g | 4.16 | 4.16 | 08/29/2025 | CHG-HTS |
| Calcium | mg | 142 | 142 | 09/02/2025 | CHG-HTS |
| Iron | mg | 0.82 | 0.82 | 09/02/2025 | CHG-HTS |
| Moisture | g | 53.58 | 53.58 | 08/29/2025 | CHG-HTS |
| Ash | g | 4.07 | 4.07 | 08/28/2025 | CHG-HTS |
| Vitamin D2 | mcg | <0.13 | <0.13 | 09/19/2025 | |

Results reported herein are provided "as is" and, unless otherwise indicated, are based solely upon samples as provided by client. This report may not be distributed or reproduced except in full. Client shall not at any time misrepresent the content of this report. These results are intended for use by persons having professional skill and training in the interpretation of testing results. Mérieux NutriSciences assumes no responsibility, and client hereby waives all claims against Mérieux NutriSciences, for interpretation of such results. If statements of conformity to client provided or regulatory specifications are made in this report, measurement of uncertainty has not been taken into account, except when requested by the client. While Mérieux NutriSciences reviews all results exceeding client specifications, the client is responsible for the compliance of its product and determining whether the results meet acceptance or other criteria. To the extent practicable, your company will give notice to, and consult with, Mérieux NutriSciences prior to implementing a withdrawal or recall of products based on any testing results. Except as otherwise stated, Merieux NutriSciences Terms and Conditions for Services apply.

Mérieux NutriSciences

**SILLIKER, Inc.**

**Stone Mountain, GA Laboratory**

2169 West Park Court, Suite G, Stone Mountain, GA 30087

Tel. 888-314-0779 Fax. 770-469-2883

Email: getresults-core@mxns.com

## CERTIFICATE OF ANALYSIS

| | |
|---|---|
| **COA No:** | ATL-49731201-0 |
| **Supersedes:** | None |
| **COA Date** | 9/19/25 |
| **Page 2 of 4** | |

***TO:***
Mr. William Dobson
Attorney
William G Dobson PC
PO BOX 349
Lookout Mountain, TN 37350

| | |
|---|---|
| ***Received From:*** | Lookout Mountain, TN |
| **Received Date:** | 8/25/25 |
| ***P.O.# / ID:*** | 57439 |
| **Location of Test: (except where noted)** Stone Mountain, GA | |

| Analytes | Units | Results Per 100g | Amount Per Serving | Test Date | Test Location |
|---|---|---|---|---|---|
| Vitamin D3 | mcg | <0.13 | <0.13 | 09/19/2025 | |
| Total Vitamin D | mcg | <0.13 | <0.13 | 09/02/2025 | CHG-HTS |

‡ This Total Dietary Fiber measurement may include polysaccharides not currently recognized as dietary fiber by FDA. Clients must review their formulas and ingredients to determine fibers not currently recognized as fiber. Clients may need to consult with their fiber manufacturers to determine the regulatory status of their fiber.

‡‡ The reported Total Sugars value is the sum of all naturally occurring and added sugars. Quantifying added sugars must be separately performed using food formulas, production records, and ingredient specifications.

**Additional Testing**

| Analyte | Result | Units | Test Approval Date | Test Location |
|---|---|---|---|---|
| * Ash | 4.07 | % (w/w) | 08/28/2025 | CHG |

Results reported herein are provided “as is” and, unless otherwise indicated, are based solely upon samples as provided by client. This report may not be distributed or reproduced except in full. Client shall not at any time misrepresent the content of this report. These results are intended for use by persons having professional skill and training in the interpretation of testing results. Mérieux NutriSciences assumes no responsibility, and client hereby waives all claims against Mérieux NutriSciences, for interpretation of such results. If statements of conformity to client provided or regulatory specifications are made in this report, measurement of uncertainty has not been taken into account, except when requested by the client. While Mérieux NutriSciences reviews all results exceeding client specifications, the client is responsible for the compliance of its product and determining whether the results meet acceptance or other criteria. To the extent practicable, your company will give notice to, and consult with, Mérieux NutriSciences prior to implementing a withdrawal or recall of products based on any testing results. Except as otherwise stated, Merieux NutriSciences Terms and Conditions for Services apply.

Mérieux NutriSciences

**SILLIKER, Inc.**

**Stone Mountain, GA Laboratory**

2169 West Park Court, Suite G, Stone Mountain, GA 30087

Tel. 888-314-0779 Fax. 770-469-2883

Email: getresults-core@mxns.com

## CERTIFICATE OF ANALYSIS

| | |
|---|---|
| **COA No:** | ATL-49731201-0 |
| **Supersedes:** | None |
| **COA Date** | 9/19/25 |
| **Page 3 of 4** | |

***TO:***

Mr. William Dobson
Attorney
William G Dobson PC
PO BOX 349
Lookout Mountain, TN 37350

| | |
|---|---|
| ***Received From:*** | Lookout Mountain, TN |
| **Received Date:** | 8/25/25 |
| ***P.O.# / ID:*** | 57439 |
| **Location of Test: (except where noted)** Stone Mountain, GA | |

**Method References**

| Test | Method Reference | Internal Reference |
|---|---|---|
| * Ash | AOAC 945.46 | QA-0225-2001 |
| * Calcium | AOAC 984.27 (mod.) | QA-9901-1146 |
| * Cholesterol | AOAC 994.10 (mod) | QA-9901-1863/Internl |
| * Dietary Fiber | AOAC 991.43 (Mod.) | QA-0220-4410 |
| * Iron | AOAC 984.27 (mod.) | QA-9901-1146 |
| * Moisture | AOAC 926.08 | QA-0200-4101 |
| * Potassium | AOAC 984.27 (mod.) | QA-9901-1146 |
| * Sodium | AOAC 984.27 (mod.) | QA-9901-1146 |
| * Sugars | AOAC 980.13 | SL-0235-4631 |
| * Total Fat | AOAC 996.06 (mod) | QA-0210-4221 |
| Calories | Calculation | |
| Protein | AOAC 992.23 | QA-9901-2200 |
| Total Carbohydrate | Calculation | |
| Total Vitamin D | AOAC 2016.05 Mod. | |
| Ash | AOAC 945.46 | QA-0225-2001 |
| Fat by Fatty Acid Profile | AOAC 996.06 (mod) | QA-0210-4221 |

Results reported herein are provided “as is” and, unless otherwise indicated, are based solely upon samples as provided by client. This report may not be distributed or reproduced except in full. Client shall not at any time misrepresent the content of this report. These results are intended for use by persons having professional skill and training in the interpretation of testing results. Mérieux NutriSciences assumes no responsibility, and client hereby waives all claims against Mérieux NutriSciences, for interpretation of such results. If statements of conformity to client provided or regulatory specifications are made in this report, measurement of uncertainty has not been taken into account, except when requested by the client. While Mérieux NutriSciences reviews all results exceeding client specifications, the client is responsible for the compliance of its product and determining whether the results meet acceptance or other criteria. To the extent practicable, your company will give notice to, and consult with, Mérieux NutriSciences prior to implementing a withdrawal or recall of products based on any testing results. Except as otherwise stated, Merieux NutriSciences Terms and Conditions for Services apply.

**SILLIKER, Inc.**

**Stone Mountain, GA Laboratory**

2169 West Park Court, Suite G, Stone Mountain, GA 30087

Tel. 888-314-0779 Fax. 770-469-2883

Email: getresults-core@mxns.com

## CERTIFICATE OF ANALYSIS

| | |
|---|---|
| **COA No:** | ATL-49731201-0 |
| **Supersedes:** | None |
| **COA Date** | 9/19/25 |
| **Page 4 of 4** | |

***TO:***
Mr. William Dobson
Attorney
William G Dobson PC
PO BOX 349
Lookout Mountain, TN 37350

| | |
|---|---|
| ***Received From:*** | Lookout Mountain, TN |
| **Received Date:** | 8/25/25 |
| ***P.O.# / ID:*** | 57439 |
| **Location of Test: (except where noted)** Stone Mountain, GA | |

**COA Comment:** Privileged and Confidential/Attorney-Work Product¿

Diana Dupraw Laboratory Director

**Noted Test Locations:** CHG-Silliker, Inc. Crete, IL Laboratory, 3600 Eagle Nest Drive, North Building, Crete, IL 60417

*I* Customer supplied information * ISO17025 Accredited Analysis † Indicates reason for COA amendent when applicable

Results reported herein are provided "as is" and, unless otherwise indicated, are based solely upon samples as provided by client. This report may not be distributed or reproduced except in full. Client shall not at any time misrepresent the content of this report. These results are intended for use by persons having professional skill and training in the interpretation of testing results. Mérieux NutriSciences assumes no responsibility, and client hereby waives all claims against Mérieux NutriSciences, for interpretation of such results. If statements of conformity to client provided or regulatory specifications are made in this report, measurement of uncertainty has not been taken into account, except when requested by the client. While Mérieux NutriSciences reviews all results exceeding client specifications, the client is responsible for the compliance of its product and determining whether the results meet acceptance or other criteria. To the extent practicable, your company will give notice to, and consult with, Mérieux NutriSciences prior to implementing a withdrawal or recall of products based on any testing results. Except as otherwise stated, Merieux NutriSciences Terms and Conditions for Services apply.

# EXHIBIT B

Give us feedback @ survey.walmart.com
Thank you! ID #:7TMTYBGLZ0C

Walmart

WM Supercenter
954-749-3111 Mgr. BETSABEL
3306 N UNIVERSITY DR
SUNRISE FL 33351
ST# 01349 OP# 009045 TE# 45 TR# 04373

# ITEMS SOLD 9
TC# 3333 1853 1554 5155 9083

| | | | | |
|---|---|---|---|---|
| OATLY OATMLK | 190646631510 | F | 4.98 | O |
| OATLY OATMLK | 190646631510 | F | 4.98 | O |
| GV LINGUINE | 078742209960 | F | 0.98 | O |
| GV BSL PESTO | 194346052900 | F | 2.48 | N |
| GV TOM SC | 078742369510 | F | 0.48 | O |
| PL16.9-35PK | 068274669310 | F | 5.88 | N |
| PL16.9-35PK | 068274669310 | F | 5.88 | N |
| PL16.9-35PK | 068274669310 | F | 5.88 | N |
| PL16.9-35PK | 068274669310 | F | 5.88 | N |

| | |
|---|---|
| SUBTOTAL | 37.42 |
| TOTAL | 37.42 |
| DISCOVER TEND | 37.42 |
| CHANGE DUE | 0.00 |

DISCOVER- 1818 I 1 APPR#03092R
37.42 TOTAL PURCHASE
REF # U175iC764946
AID A0000001523010
TERMINAL # SC011255
*No Signature Required
08/30/24 17:05:05

Get free delivery
from this store
with Walmart+
Scan for 30-day free trial

Low prices You Can Trust. Every Day.
08/30/24 17:05:21